UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEIU UNITED HEALTHCARE WORKERS-WEST,<br><br>     Plaintiff,<br><br>   v.<br><br>SANTA ROSA COMMUNITY HEALTH CENTERS,<br><br>     Defendant. | Case No. 22-cv-03261-JSC<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 14 |

Petitioner SEIU United Healthcare Workers-West (the Union) filed this petition to compel arbitration against Respondent Santa Rosa Community Health Centers (SRCHC) seeking to compel Respondent to arbitrate a dispute regarding one of its members, Elizabeth Lencioni. There is a parallel civil case pending is this District brought by Ms. Lencioni against the Union and SRCHC. *See Lencioni v. SEIU, et al.*, Case No. 19-cv-07272-JD (N.D. Cal. Nov. 5, 2019). In that action, Ms. Lencioni brings wrongful discharge claims against SRCHC and alleges that the Union breached its duty of representation by failing to timely preserve her right to arbitration. Over two years after Ms. Lencioni filed that action, the Union filed the underlying action and the now pending motion to compel arbitration. (Dkt. No. 14.) Having considered the parties' briefs and having had the benefit of oral argument on August 31, 2022, the Court GRANTS the motion to compel arbitration. Respondent's procedural challenges must be presented to the arbitrator, not this Court.

**BACKGROUND**

SRCHC and the Union are parties to a collective bargaining agreement (CBA)

which contains a grievance procedure for resolving union member disputes. (Dkt. No. 1 at ¶ 5; Dkt. No. 1-1 at Sec. 38.) The grievance process contains four steps. (Dkt. No. 1-1 at 33-35.[1]) At Step One, once a grievance is filed there is a meeting with the director of human resources or its designee. (*Id*. at 33.) If the Union is dissatisfied with human resources' response, the parties can proceed to Step Two which involves filing a grievance with the Adjustment Board. (*Id*. at 34.) If the Step Two grievance does not resolve the matter, then the parties shall meet with a mediator to attempt a resolution at Step Three. (*Id*.) If the mediation does not resolve the grievance, then the grieving party has ten days to advise the other party in writing of its intent to submit the "unresolved dispute grievance to arbitration." (*Id*. at 34-35.)

While Ms. Lencioni was employed at SRCHC, she was a member of the Union and protected by the CBA including its grievance provisions. (Dkt. No. 1 at ¶ 6.) On February 8, 2019, the Union filed a Step One grievance asserting that SRCHC terminated Ms. Lencioni's employment without just cause. (*Id*. at ¶ 7.) SRCHC denied the grievance and the Union advanced the grievance to Step 2. (*Id.* at ¶ 8.) The parties met for an Adjustment Board meeting on March 25, 2019 and SRCHC again denied the grievance. (*Id*. at ¶ 9.) The Union then advanced the grievance to Step Three and the parties attended a mediation on June 3, 2019. (*Id*. at ¶ 11.)

A month later, on July 3, 2019, Union Coordinator Mark Hall sent an email to SRCHC Human Resources Manager Renae Crabtree "requesting to meet with you and Elizabeth Lencioni… to discuss the proposal regarding Elizabeth's termination." (Dkt. No. 14-2 at 97.) Five days later, Ms. Crabtree responded stating:

> I understand you would like to meet and discuss Elizabeth Lencioni's case however as stated in section 38.4 of the CBA the time to respond expired on July 1st. Attached is the last communication dated 6/21 sent to Michael Velasquez. No response was received as such SRCH considers the grievance closed.

(Dkt. No. 14-2 at 99 (there is no attachment).) Mr. Hall and Ms. Crabtree exchanged emails the following day regarding meeting in person. (*Id*. at 101-103.) Mr. Hall attests that he and Ms.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Lencioni met with Ms. Crabtree on July 12, but "the parties could not reach a mutually acceptable resolution." (Dkt. No. 14-2 at ¶ 15.) Mr. Hall indicates that SRCHS "maintained its position that the case was 'closed.'" (*Id*. at ¶ 16.)

On November 5, 2019, Ms. Lencioni filed a civil action against SRCHC for wrongful termination and breach of contract, and the Union for breach of the duty of representation for failing to timely submit her grievance to arbitration. *See Lencioni v. SEIU, et al*., Case No. 19-cv-07272-JD (N.D. Cal. Nov. 5, 2019). A month later, on December 5, 2019, Mr. Hall sent Ms. Crabtree a letter demanding that SRCHC arbitrate Ms. Lencioni's wrongful termination grievance. (Dkt. No. 14-2 at 105.) Mr. Hall's letter also indicated that it was his understanding that a former representative of the union, Ian Velasquez, "did timely demand arbitration" and that if SRCHC maintains its position that the arbitration demand was untimely, then the parties "must arbitrate the procedural dispute." (*Id.*) Jessica Jauregui, SRCHC's Chief Human Resources Officer responded a week later requesting any documentation that Mr. Velasquez made a timely demand for arbitration and seeking authority for Mr. Hall's statement that "the parties must arbitrate the procedural dispute." (*Id*. at 107.) The Union sent a response letter on January 21, 2020. (Dkt. No. 14-3 at 7.) No response has been received. (Dkt. No. 14-3 at ¶ 5.)

Over two years later, on June 3, 2022, the Union filed the underlying petition to compel arbitration. (Dkt. No. 1.) SRCHC filed its answer on July 25 and the following day the Union filed the now pending motion to compel arbitration. (Dkt. Nos. 13, 14.)

**DISCUSSION**

Section 301(a) of the Labor Management Relations Act ("LMRA"), provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a). This jurisdiction includes the power to enforce agreements that require resolution of disputes through arbitration. *See Textile Workers Union of Am. v. Lincoln Mills of Ala*., 353 U.S. 448, 455 (1957). The district court determines in the first instance whether a collective bargaining agreement "creates a duty for the parties to arbitrate the particular grievance." *AT & T Techs., Inc. v. Commc'ns Workers of Am*., 475 U.S. 643, 648-49 (1986). Arbitration clauses create a presumption of arbitrability such that "disputes involving the

agreement's substantive provisions must be arbitrated unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Loc. Joint Exec. Bd., Loc. Joint Exec. Bd. v. Mirage Casino-Hotel, Inc*., 911 F.3d 588, 596 (9th Cir. 2018) (cleaned up). Although the court decides whether the arbitration agreement covers the subject matter of the dispute, questions of procedural arbitrability related to that dispute "are presumptively for the arbitrator." *Id*.

The Union insists that the sole question before the Court is whether the Union's grievance is "substantively arbitrable" and if so, then the arbitrator decides both the merits of the dispute and any procedural issues such as whether the Union timely advanced the grievance. (Dkt. No. 14-1 at 7.) SRCHC does not dispute that the underlying grievance would have been arbitrable, but insists that the Union waived the right to pursue arbitration by failing to make a timely demand for arbitration. (Dkt. No. 16 at 2.)

### A. Timeliness of the Petition

Generally, "a petition to compel arbitration under Section 301 has a six-month statute of limitations." *SEIU United Healthcare Workers-W. v. Los Robles Reg'l Med. Ctr*., 812 F.3d 725, 730 (9th Cir. 2015) (internal citation omitted). The statute of limitations begins to run "when it [is] made clear ... to the Union that the Employer would not submit to arbitration." *Teamsters Union Local 315 v. Great Western Chemical Co*., 781 F.2d 764, 769 (9th Cir. 1986). An employer "'make[s] it clear' that it refuse[s] to arbitrate and ... starts the statute of limitations, [when] an unequivocal, express rejection of the union's request for arbitration [is] communicated to the union. Constructive notice is not sufficient*." Local Joint Executive Bd. of Las Vegas v. Exber, Inc*., 994 F.2d 674, 676 (9th Cir. 1993) (internal citation omitted).

The Union spends much of its motion to compel arbitration arguing that the petition—which was filed over two years after the last communication from SRCHC regarding Ms. Lencioni's grievance—was timely because there was "never an unequivocal, express rejection of the union's request for arbitration must be communicated to the union." *Exber*, 994 F.2d at 676. The Court need not address this question, however, because SRCHC has not pled an affirmative defense based on the statute of limitations. (Dkt. No. 13 at 3.) The statute of limitations is an

4

affirmative defense which is waived if not raised in the first responsive pleading. *See Morrison v. Mahoney*, 399 F.3d 1042, 1046 (9th Cir. 2005); *see also* Fed. R. Civ. P. 8(c). SRCHC has not raised a statute of limitations defense either in its answer or in its opposition to the motion to compel arbitration.

### B. Scope of the Arbitration Agreement

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582 (1960). "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986). "[I[n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id*. at 649. Rather, the court "is confined to determining (1) whether a collective bargaining agreement is in existence and (2) whether the agreement requires arbitration of the dispute at issue." *Unite Here Loc. 30 v. Omni Hotels Mgmt. Corp.*, No. 19-CV-830-MMA (LL), 2019 WL 6118461, at *5 (S.D. Cal. Nov. 18, 2019) (citing *Int'l Union of Operating Engineers, Local 150, AFL-CIO v. Flair Builders, Inc.*, 406 U.S. 487, 491–92 (1972).

"Thus 'procedural' questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide." *Howsam v. Dean Witter Reynolds. Inc.*, 537 U.S. 79, 84 (2002) (*quoting John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964)) (emphasis in original). "[T]he presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." *Howsam*, 537 U.S. at 84 (internal citation and alteration omitted). However, "[t]here is some support for the proposition that a court may consider a strictly procedural question as to the timeliness of a demand for arbitration in those rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration." *Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Loc. 588 v. Servomation Corp.*, 717 F.2d 475, 478 (9th Cir. 1983).

5

The Union maintains that the timeliness of its arbitration demand is a procedural question for the arbitrator. SRCHC counters that it is not because Section 38.4 of the CBA states that

> 4. Power of Arbitrator – The Arbitrator shall render a final and binding decision only on the matter(s) jointly submitted by the parties, and shall have no power to amend the collective bargaining agreement in any way.

(Dkt. No. 1-1 at 35.) According to SRCHC, because (1) waiving the time limits requires an alteration of the CBA, and (2) the parties have not jointly submitted the procedural issue to the arbitration, the issue is for the Court not the arbitrator to decide. SRCHC insists that this is one of the "rare instances where no factual dispute exists" as in *Servomation*. SRCHC's arguments are unpersuasive.

First, the parties' dispute regarding the timeliness of the Union's arbitration demand cannot be extricated from their substantive dispute. As the Supreme Court noted in *Wiley*, procedural questions are often intertwined with the merits of a case such that both issues should be decided in the same forum:

> We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.
> ...
> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

*Wiley*, 376 U.S. at 556-57. Here, the parties dispute whether the Union made a timely demand for arbitration. Given the CBA's broad definition of a grievance as any "complaint regarding the application or interpretation of the Agreement" (Dkt. No. 1-1, § 38 at 33), the "parties' dispute about timeliness cannot be extricated from their substantive disagreement about the meaning of the CBA." *Unite Here! Loc. 2 v. Tastes on the Fly, Inc*., No. 21-CV-01801-DMR, 2021 WL 3286829, at *4 (N.D. Cal. Aug. 2, 2021) (finding that the parties' timeliness dispute was for the arbitrator not the court to decide given that the CBA broadly defined a grievance as any dispute

"involving the meaning/interpretation .... or alleged violation of any provision of this Agreement"); *see also Unite Here Loc. 30 v. Omni Hotels Mgmt. Cor*p., No. 19CV830-MMA (LL), 2019 WL 6118461, at *7 (S.D. Cal. Nov. 18, 2019) (finding that arguments regarding timeliness and conditions precedent to arbitration were for the arbitrator to decide where the parties' agreement broadly defined a grievance subject to the arbitration process as "a dispute between the parties as to the interpretation or application of any provision(s) of this Agreement."); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO/CLC v. Vista Metals Corp.*, No. 19-CV-01781 CAS (SHKx), 2020 WL 1639895, at *6 (C.D. Cal. Apr. 1, 2020) (collecting cases re: the same).

This applies equally to SRCHC's arguments regarding the arbitrator's "powers" under the CBA—it is for the arbitrator, not this Court, to decide whether it has the power to resolve disputes only if "jointly submitted" and whether resolving the parties' timeliness dispute would involve amendment of the CBA. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.").

Second, this is not one of the "rare instances where no factual dispute exists and resolution of the issue would preclude all need for arbitration." *Retail Delivery Drivers*, 717 F.2d at 478. SRCHC's argument to the contrary is essentially that there is no factual dispute because it believes that it is right. The Union, however, sharply disputes SRCHC's statement that "the deadline to demand arbitration passed on July 8, 2019" and that the Union's "late demand for arbitration was unequivocally rejected." (Dkt. No. 16 at 5.) Indeed, the Union insists that discussions were ongoing—Mr. Hall, Ms. Crabtree, and Ms. Lencioni met on July 12, and according to Mr. Hall, "the Union made further settlement offers." (Dkt. No. 14-2 at ¶¶ 14-16.) Resolving these factual disputes and the credibility of the parties' versions of events is a question for the arbitrator, not the Court. *See Servomation*, 717 F.2d at 478 ("when time limitations and other procedural requirements are made an express part of the arbitration agreement, they become part of the bundle of issues the parties consented to have decided by an arbitrator's special interpretative

ability" and declining to rule on the parties' timeliness dispute where the union had "claimed a reason for finding it had complied with the timeliness requirements" of the collective bargaining agreement).

Accordingly, SRCHC has not shown a basis to depart from the general rule that procedural disputes—such as the timeliness issue here—should be decided by an arbitrator, not the court.

### C. Discovery

In the alternative, SRCHC asks the Court to defer ruling pending discovery. SRCHC has not explained, however, how any discovery would be relevant to the motion to compel arbitration. It would not. The discovery it seeks may be relevant to the timeliness of the Union's arbitration demand, but that is an issue for the arbitrator to decide.

### CONCLUSION

For the reasons stated above, the Court GRANTS the motion to compel arbitration. Respondent is ordered to submit the grievance regarding Ms. Lencioni's termination to arbitration pursuant to the terms of the CBA and raise the issue of the untimeliness of the demand with the arbitrator.

This Order disposes of Docket No. 14.

The Clerk shall close the case.

**IT IS SO ORDERED.**

Dated: August 31, 2022

JACQUELINE SCOTT CORLEY
United States District Judge